**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION AT GREENEVILLE**

| | |
|---|---|
| **RANDY CHAMPION, Individually, and on Behalf of Similarly-Situated Employees,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **CASE NO.:** |
| } | **JURY TRIAL DEMANDED** |
| **CACI INTERNATIONAL INC., CACI PREMIER** } | |
| **TECHNOLOGY, INC., CACI, INC. -FEDERAL, and** } | **FLSA COLLECTIVE ACTION** |
| **CACI NSS, INC. d/b/a CACI and ANDREW BUTLER,** } | |
| **FRANK ABRAMCHECK, LOREN SCHMIDT, and** } | |
| **VALENCIA EDWARDS,** } | |
| } | |
| **Defendants.** } | |

## COMPLAINT

**COMES NOW** the plaintiff, Randy Champion ("Plaintiff" or "Mr. Champion"), individually, and on behalf of similarly-situated employees, by and through undersigned counsel, Law Office of James W. Friauf, PLLC and Law Office of Mark N. Foster, PLLC, and for his Complaint against CACI International, Inc., CACI Premier Technology, Inc., CACI, Inc. -Federal, and CACI NSS, Inc. d/b/a CACI ("CACI") and Andrew Butler ("Butler"), Frank Abramcheck ("Abramcheck"), Loren Schmidt ("Schmidt"), and Valencia Edwards ("Edwards") (collectively, "Defendants"), avers as follows:

### I.    NATURE OF THE CASE

1.    This is a FLSA-overtime collective action and retaliation case.

2.    Plaintiff is an NBIB Field Investigator employed by Defendants, who are government contractors. As an NBIB Field Investigator, Plaintiff is tasked with protecting the United States of America and

1

her citizens from foreign and domestic threats by performing background investigations for use in determining whether to grant security clearances to government employees.

3.      Plaintiff routinely works in excess of forty (40) hours per week. During the course of his employment, Plaintiff has repeatedly raised concerns to Defendants regarding Defendants' failure to properly compensate Plaintiff for those overtime hours. Plaintiff has also raised concerns regarding Defendants' requirement that Plaintiff falsify his time records to wrongly indicate he did not work in excess of forty (40) hours per week.

4.      In response, Defendants baselessly informed Plaintiff that the United States Office of Personnel Management ("OPM") had revoked Plaintiff's security clearance. Defendants utilized this untrue assertion as pretext to indefinitely suspend Plaintiff's employment without pay.

5.      Upon information and belief, Plaintiff is one (1) of approximately three thousand (3,000) similarly-situated NBIB Field Investigators from whom Defendants have stolen overtime compensation.

## II.   PARTIES

6.      Plaintiff Randy Champion is a resident citizen of the State of Tennessee, County of Carter. At all times material hereto, Mr. Champion was employed by Defendants as an NBIB Field Investigator.[1]

7.      Defendant CACI International, Inc., is a Delaware, for-profit corporation with its principal place of business in Arlington, Virginia. At all times material hereto, CACI International, Inc., was engaged in the background investigation and national security industry and transacts, or has transacted, business in the State of Tennessee, County of Carter, by, *inter alia,* employing Plaintiff Randy Champion. Service of process may be perfected via CACI International, Inc.'s registered agent, Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219.

---

[1] Mr. Champion's job title is NBIB Field Investigator, which, upon information and belief, is the same as "Field Investigator." Accordingly, the Complaint uses the term "Field Investigator" for simplicity.

2

8. Defendant CACI Premier Technology, Inc., is a Delaware, for-profit corporation with its principal place of business in Arlington, Virginia. At all times material hereto, CACI Premier Technology, Inc., was engaged in the background investigation and national security industry and transacts, or has transacted, business in the State of Tennessee, County of Carter, by, *inter alia*, employing Plaintiff Randy Champion. Service of process may be perfected via CACI Premier Technology, Inc.'s registered agent, Corporation Service Company, 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219.

9. Defendant CACI, Inc. -Federal is a Delaware, for-profit corporation with its principal place of business in Arlington, Virginia. CACI, Inc. -Federal is registered to conduct business in the State of Tennessee. At all times material hereto, CACI, Inc. -Federal was engaged in the background investigation and national security industry and transacts, or has transacted, business in the State of Tennessee, County of Carter, by, *inter alia*, employing Plaintiff Randy Champion. Service of process may be perfected via CACI, Inc. -Federal's registered agent, United States Corporation Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

10. Defendant CACI NSS, Inc., is a Delaware, for-profit corporation with its principal place of business in Arlington, Virginia. CACI NSS, Inc., is registered to conduct business in the State of Tennessee. At all times material hereto, CACI NSS, Inc., was engaged in the background investigation and national security industry and transacts, or has transacted, business in the State of Tennessee, County of Carter, by, *inter alia*, employing Plaintiff Randy Champion. Service of process may be perfected via CACI NSS, Inc.'s registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

11. Upon information and belief, Defendant Andrew Butler is a resident citizen of the Commonwealth of Virginia, County of Fairfax. At all times material hereto, Defendants employed Butler Defendants as a Program Manager. Upon information and belief, Butler may be served with process at 1100 North Glebe Road, Arlington, Virginia 22201.

3

12.     Upon information and belief, Defendant Frank Abramcheck is a resident citizen of the Commonwealth of Virginia, County of Fairfax. At all times material hereto, Defendants employed Abramcheck as Program Vice President. Upon information and belief, Abramcheck may be served with process at 1100 North Glebe Road, Arlington, Virginia 22201.

13.     Upon information and belief, Defendant Loren Schmidt is a resident citizen of the Commonwealth of Virginia, City of Alexandria. At all times material hereto, Defendants employed Schmidt as Regional Manager for the Southeast United States and Caribbean Region. Upon information and belief, Schmidt may be served with process at 1100 North Glebe Road, Arlington, Virginia 22201.

14.     Upon information and belief, Defendant Valencia Edwards is a resident citizen of the Commonwealth of Virginia, County of Franklin. At all times material hereto, Defendants employed Edwards as Section Leader for the Southwest Virginia and Northern Virginia Section of the Southeast United States and Caribbean Region. Upon information and belief, Edwards may be served with process at 449 Rakes Road, Rocky Mount, Virginia 24151.

### III.     JURISDICTION AND VENUE

15.     This action arises from: (i) Defendants' failure to pay Plaintiff and similarly-situated employees overtime compensation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*; and (ii) Defendants' retaliatory, indefinite, and unpaid suspension of Plaintiff in response to Plaintiff's opposition to Defendants' unlawful FLSA practices. Jurisdiction is proper. 28 U.S.C. § 1331.

16.     A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Carter County, Tennessee.  Venue is proper. 28 U.S.C. § 1391(b)(2).

### IV.     FACTUAL ALLEGATIONS

17.     Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-16 herein, inclusive.

4

A.    Mr. Champion Works Substantial Overtime without Compensation

18.    From the time Mr. Champion's employment with CACI commenced in October 2014, until his retaliatory, indefinite, and unpaid suspension on or about January 10, 2018, he consistently worked in excess of forty (40) hours per week. Despite the foregoing, Defendants did not compensate Mr. Champion for this overtime.

19.    According to Mr. Champion's time records, he worked the following number of hours for the referenced pay periods, but was paid no overtime compensation:

|     |     |     |
| --- | --- | --- |
| a. | October 1, 2013 - October 15, 2013: | **96.00 hours**; |
| b. | October 16, 2013 - October 31, 2013: | **96.00 hours**; |
| c. | November 1, 2013 - November 15, 2013: | **101.00 hours**; |
| d. | November 16, 2013 - November 30, 2013: | **90.00 hours**; |
| e. | December 1, 2013 - December 15, 2013: | **80.00 hours**; |
| f. | December 16, 2013 - December 31, 2013: | **75.00 hours**; |
| g. | January 1, 2014 - January 15, 2014: | **88.50 hours**; |
| h. | January 16, 2014 - January 31, 2014: | **96.00 hours**; |
| i. | February 1, 2014 - February 15, 2014: | **80.00 hours**; |
| j. | February 16, 2014 - February 28, 2014: | **80.00 hours**; |
| k. | March 1, 2014 - March 15, 2014: | **80.00 hours**; |
| l. | March 16, 2014 - March 31, 2014: | **90.50 hours**; |
| m. | April 1, 2014 - April 15, 2014: | **99.00 hours**; |
| n. | February 1, 2015 - February 15, 2015: | **80.00 hours**; |
| o. | February 16, 2015 - February 28, 2015: | **63.00 hours**; |
| p. | March 16, 2015 - March 31, 2015: | **96.00 hours**; |

5

| q. | April 1, 2015 - April 15, 2015: | **84.00 hours**; |
|---|---|---|
| r. | April 16, 2015 - April 30, 2015: | **88.00 hours**; |
| s. | May 16, 2015 - May 31, 2015: | **87.00 hours**; |
| t. | June 1, 2015 - June 15, 2015: | **97.00 hours**; |
| u. | June 16, 2015 - June 30, 2015: | **97.00 hours**; |
| v. | July 1, 2015 - July 15, 2015: | **96.00 hours**; |
| w. | July 16, 2015 - July 31, 2015: | **96.00 hours**; |
| x. | August 1, 2015 - August 15, 2015: | **80.00 hours**; |
| y. | November 16, 2015 - November 30, 2015: | **88.00 hours**; |
| z. | December 1, 2015 - December 15, 2015: | **88.00 hours**; |
| aa. | December 16, 2015 - December 31, 2015: | **96.00 hours**; |
| bb. | January 1, 2016 - January 15, 2016: | **88.00 hours**; |
| cc. | January 16, 2016 - January 31, 2016: | **80.00 hours**; |
| dd. | February 1, 2016 - February 15, 2016: | **88.00 hours**; |
| ee. | February 16, 2016 - February 29, 2016: | **79.00 hours**; |
| ff. | March 1, 2016 - March 15, 2016: | **88.00 hours**; |
| gg. | March 16, 2016 - March 31, 2016: | **96.00 hours**; |
| hh. | April 1, 2016 - April 15, 2016: | **88.00 hours**; |
| ii. | April 16, 2016 - April 30, 2016: | **80.00 hours**; |
| jj. | May 1, 2015 - May 15, 2015: | **80.00 hours**; |
| kk. | May 16, 2016 - May 31, 2016: | **96.00 hours**; |
| ll. | June 1, 2016 - June 15, 2016: | **88.00 hours**; |
| mm. | June 16, 2016 - June 30, 2016: | **88.00 hours**; |

6

| nn. | July 1, 2016 - July 15, 2016: | **88.00 hours;** |
|-----|-------------------------------|------------------|
| oo. | July 16, 2016 - July 31, 2016: | **88.00 hours;** |
| pp. | August 1, 2016 - August 15, 2016: | **88.00 hours;** |
| qq. | August 16, 2016 - August 31, 2016: | **96.00 hours;** |
| rr. | September 1, 2016 - September 16, 2016: | **88.00 hours;** |
| ss. | September 16, 2016 - September 30, 2016: | **88.50 hours;** |
| tt. | October 1, 2016 - October 15, 2016: | **80.00 hours;** |
| uu. | October 16, 2016 - October 31, 2016: | **88.00 hours;** |
| vv. | November 1, 2016 - November 15, 2016: | **88.00 hours;** |
| ww. | November 16, 2016 - November 30, 2016: | **88.00 hours;** |
| xx. | December 1, 2016 - December 15, 2016: | **89.00 hours;** |
| yy. | December 16, 2016 - December 31, 2016: | **88.00 hours;** |
| zz. | January 1, 2017 - January 15, 2017: | **80.00 hours;** |
| aaa. | January 16, 2017 - January 31, 2017: | **96.00 hours;** |
| bbb. | February 1, 2017 - February 15, 2017: | **88.00 hours;** |
| ccc. | February 16, 2017 - February 28, 2017: | **88.00 hours;** |
| ddd. | March 1, 2017 - March 15, 2017: | **88.00 hours;** |
| eee. | March 16, 2017 - March 31, 2017: | **100.00 hours;** |
| fff. | April 1, 2017 - April 15, 2017: | **80.00 hours;** |
| ggg. | April 16, 2017 - April 30, 2017: | **80.00 hours;** |
| hhh. | May 1, 2017 - May 15, 2017: | **88.00 hours;** |
| iii. | May 16, 2017 - May 31, 2017: | **96.00 hours;** |
| jjj. | June 1, 2017 - June 15, 2017: | **88.00 hours;** |

7

| kkk. | June 16, 2017 - June 30, 2017: | **88.00 hours**; |
|------|-------------------------------|------------------|
| lll. | August 1, 2017 - August 15, 2017: | **106.00 hours**; |
| mmm. | September 1, 2017 - September 15, 2017: | **104.00 hours**; |
| nnn. | September 16, 2017 - September 30, 2017: | **125.00 hours**; |
| ooo. | October 1, 2017 - October 15, 2017: | **88.00 hours**; |
| ppp. | October 16, 2017 - October 31, 2017: | **96.00 hours**; |
| qqq. | November 1, 2017 - November 15, 2017: | **96.00 hours**; |
| rrr. | November 16, 2017 - November 30, 2017: | **96.00 hours**; |
| sss. | December 1, 2017 - December 15, 2017: | **88.00 hours**; |
| ttt. | December 16, 2017 - December 31, 2017: | **80.00 hours**; and |
| uuu. | January 1, 2018 - January 15, 2018: | **64.00 hours**. |

20.     During a certain period between May 2015 and June 2015, Mr. Champion worked forty-one (41) consecutive days without overtime compensation. **[See Exhibit "1," attached hereto and incorporated herein by reference]**.

B.      Defendants Force Mr. Champion to Falsify his Time Cards so as to Deprive him of Overtime Compensation

21.     On or about December 14-15, 2017, Mr. Champion's supervisor, Edwards, forced Mr. Champion to falsify his time card to deprive him of compensation for all hours worked. **[See Exhibit "2," attached hereto and incorporated herein by reference]**.

C.      In Response to the Forced Falsification, Mr. Champion Questions and Protests Defendants' FLSA Practices

22.     On or about December 29, 2017, Mr. Champion raised concerns to Edwards regarding: (i) Defendants' failure to properly compensate Mr. Champion for time worked in excess of forty (40) hours per

8

workweek; and (ii) forcing Mr. Champion to falsify his time card. **[See Exhibit "3," attached hereto and incorporated herein by reference]**.

23. After Edwards failed to address Mr. Champion's concerns, Mr. Champion contacted fellow Field Investigator Scott Carter ("Carter"). During their communications, Mr. Champion requested Carter pass Mr. Champion's concerns to Schmidt (Edwards's supervisor) due to Edwards's previous failure to address these concerns. **[See Exhibit "4," attached hereto and incorporated herein by reference]**.

24. On January 5, 2018, Carter passed Mr. Champion's concerns to Schmidt. **[See Exhibit "5," attached hereto and incorporated herein by reference]**.

D. <u>Defendants Retaliate against Mr. Champion for Questioning and Protesting Defendants' FLSA Practices</u>

25. Schmidt responded five (5) days later (January 10, 2018) by "immediately" suspending Mr. Champion. **[See Exhibit "6," attached hereto and incorporated herein by reference]**. Schmidt advised Mr. Champion of his "suspension" via telephone on January 10, 2018. However, Schmidt failed to provide Mr. Champion with a reason for his suspension. Accordingly, upon information and belief, Defendants suspended Mr. Champion as a direct and proximate result of (and in retaliation for) his complaints relative to Defendants' wage theft.

26. This telephone call occurred while Mr. Champion was meeting with his OPM investigator, who was conducting Mr. Champion's regularly-scheduled background review.

27. Schmidt's letter similarly provides no reason for Mr. Champion's suspension. **[See *id.*]**. Notwithstanding the foregoing, CACI's online employee portal indicated Mr. Champion was placed on a "Disciplinary Leave" commencing January 11, 2018. **[See Exhibit "7," attached hereto and incorporated herein by reference]**.

9

28.     On or about January 19, 2018, the online employee portal indicated Mr. Champion's "Estimated Last Day of Leave" was March 12, 2018." **[See *id.*]**. March 12, 2018, has come and gone.

29.     On or about January 11, 2018, CACI canceled Mr. Champion's health insurance benefits. **[See Exhibits "8" and "9," attached hereto and incorporated herein by reference]**.

30.     On or about January 24, 2018, the OPM investigator performing Mr. Champion's periodic background evaluation informed Mr. Champion she was "currently being directed to hold on your case." **[See Exhibit "10," attached hereto and incorporated herein by reference]**.

31.     On or before January 29, 2018, CACI maintained an active online job posting for Mr. Champion's employment position. **(See Exhibit "11," attached hereto and incorporated herein by reference)**.

32.     Upon information and belief, after Defendants' retaliatory suspension of Mr. Champion, Defendants directed their employees to refrain from speaking to Mr. Champion or his attorneys.

E.     <u>Defendants Maintain a Company-wide Policy of Depriving Field Investigators of Overtime Compensation</u>

33.     Defendants have a <u>company-wide policy</u> – which has existed for years (including the entirety of the three (3) years preceding the filing of this Complaint) – of forcing Field Investigators to work more than forty (40) hours per week (including nights and weekends) without overtime compensation. The articulated reason for this policy was meeting CACI's performance expectations. **(See Exhibits "12," "13," and "14," attached hereto and incorporated herein by reference)**.

34.     Upon information and belief, the following Field Investigators are some of those employees similarly-situated to Mr. Champion. Each employee is/was subordinate to Edwards or another Section Leader and subjected to the same wage and hour violations as Mr. Champion:

10

| Kathleen Akins | Shannon Arehart | Grady Bell | Jack Booth |
|---|---|---|---|
| Shawn Brewer | Scott Carter | Michele Clint | Michael Cundiff |
| Peter Denman | Jolee Dennis | Brandon Dodick | Michael Furlong |
| Eduardo Garcia | Jacqueline Gill | Hannah Gzemski | Ali Hamed |
| Kate Hamilton | David Hayes | Melissa Hillis | Fraser Kinnear |
| John Leo | Daniel Lierz | Kevin Logan | Lauren Maples |
| Jesse Moore | Crystal Murphy | Fortune Odendhal | David Scalf |
| Angela Smith | Arielle Sparkman | Matthew Staples | Jake Streng |
| Ryan Talarico | Judy Terrell | Jeremy Tucker | Bert Turner |
| William Vassar | Tamara Walker | | |

**[See Exhibits "15" and "16," attached hereto and incorporated herein by reference].**

35.     Upon information and belief, the referenced employees are merely a small sampling of the approximately three thousand (3,000) Field Investigators employed by Defendants nationwide. The foregoing Field Investigators perform the same (or similar) work and are subjected to the same (or similar) working conditions as Mr. Champion, including overtime wage theft.

F.     CACI's Corporate Officers Promulgate CACI's Company-wide Policy of Overtime Theft, while CACI Field Operations' Managers and Leaders Enforce It.

36.     With respect to Mr. Champion, his chain of supervision is as follows:

    a.     Randy Champion (Field Investigator);

    b.      Valencia Edwards (Section Leader for Southwestern Virginia and Northern Virginia Section);

    c.     Loren Schmidt (Regional Manager for Southeast and Caribbean Region);

    d.      Frank Abramcheck (Program Vice President); and, finally,

11

e.     Andrew Butler (Program Manager).

37.     Regional Managers, including Schmidt, supervise CACI Field Operations personnel.[2] Regional Managers are subordinate to CACI's Program Manager and Program Vice President and are charged with implementing and enforcing CACI's corporate policies and procedures.

38.     CACI's Regional Managers oversee Section Leaders, including Edwards.

39.     CACI's Section Leaders each supervise a team of Field Investigators.

40.     Abramcheck and Butler direct CACI's Regional Managers and Section Leaders to ensure Field Investigators do not receive overtime compensation, even when such employees work more than forty (40) hours per week.

41.     Accordingly, upon information and belief: (i) Butler and/or Abramcheck promulgate or adopt Defendants' wage and hour policies and procedures; and (ii) CACI's Regional Managers and Section Leaders enforce these policies and procedures onto their respective teams of Field Investigators. **(See Exhibits "17" and "18")**.

42.     Upon information and belief, CACI enforces a company-wide policy of misclassifying its Field Investigators as FLSA-exempt, thereby depriving them of overtime compensation.

### G.     The United States Department of Labor Concluded Field Investigators are not Exempt from Overtime Compensation Pursuant to the FLSA

43.     In 2005, the United States Department of Labor ("DOL") concluded that Investigators are not FLSA exempt. **(Exhibit "19," attached hereto and incorporated herein by reference)**.

44.     The DOL authored this opinion in response to a request from a government contractor. The contractor performed federal background investigations of potential government employees being considered

---

[2] CACI refers to its Regional Managers, Section Leaders, and Field Investigators, collectively, as "CACI Field Operations." **(See, e.g., Exhibits "17" and "18")**.

12

for United States Government Secret and Top Secret security clearances. The contractor requested the DOL issue an opinion as to whether its Investigators were FLSA-exempt.

45.     The DOL identified the investigators' job duties as including:

a.      Providing information critical for Defense Security Service ("DSS") to determine an individual's eligibility for access to classified information and/or assignment to, or retention in, positions with sensitive duties;

b.      Interviewing the subject of the investigation and witnesses who may have relevant information;

c.      Checking public and criminal records;

d.      Carrying DSS credentials and identifying themselves as contract investigators on behalf of DSS;

e.      Scheduling and prioritizing up to ten (10) outstanding assigned investigations simultaneously, requiring completion by a specified deadline;

f.      Scheduling and prioritizing his or her pursuit of investigative leads;

g.      Exercising discretion to investigate other leads by assessing the leads assigned for a case and following additional or alternative leads where appropriate;

h.      Striking a balance between contacting a sufficient number of sources in order to get a complete picture of a subject's life and "committing investigative over-kill";

i.      Investigating the details of the individual's life while using tact and discretion;

j.      Possessing a high level of professional judgment in pursuing investigative leads;

k.      Obtaining record information regarding citizenship, education, employment, unemployment, criminal convictions, medical history, financial history, foreign travel, and foreign connections;

l.      Exercising discretion and experience in eliciting information;

m.      Using the investigator's own "style" and "whatever works best" as long as the investigator's methodology is in compliance with ethical standards;

13

n.  Resolving any discrepancies or inconsistencies developed during the investigation in accordance with broad DSS guidelines, which offer only the minimum efforts that an investigator must pursue;

o.  Exercising discretion to conduct additional investigation to resolve any still-existing issues;

p.  Making credibility determinations; and

q.  Assembling all investigative leads at the conclusion of the investigation process into a Report of Investigation ("ROI").

(*Id.*).

46.  Stated more succinctly, the DOL concluded that the investigator's job duties were to gather factual information according to DSS guidelines and prepare a report about candidates for sensitive Department of Defense ("DoD") positions so as to allow others in DSS to determine whether to employ individuals in positions requiring access to classified national security information.

47.  DSS possesses the sole discretion to render decisions relative to the granting of security clearances. DSS bases this decision, in part, on an investigator's report(s). Accordingly, an investigator's accuracy is critically important to DSS.

48.  The DOL noted the following prerequisite qualifications for investigators: (i) successful completion of a four-year course of study leading to a bachelor's degree (presumably in any field); or (ii) three (3) years of general experience and successful completion of a Personnel Security Investigations ("PSI") Investigator training course approved by DSS (four-week training program consisting of classroom instruction and field training on background investigations for the government; or (iii) two (2) years of specialized experience within the last five (5) years and successful completion of the PSI Investigator training course, as approved by DSS; or (iv) one (1) year of specialized federal background investigation experience within the last five (5) years. Investigators must also possess at least a Department of Defense Secret clearance or an interim Top Secret clearance.

14

49.     After setting forth the statutory and regulatory requirements an employee must meet to qualify for the administrative exemption to minimum wage and overtime compensation pursuant to the FLSA, the DOL concluded Investigators did not meet the enumerated requirements. Hence, Investigators are not exempt from minimum wages and overtime compensation under the FLSA.

50.     With respect to whether the investigators met the second prong of the administrative exemption, i.e., that the employee's ". . . primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers . . .," the DOL adjudged that:

> . . . the activities performed by Investigators . . . are more related to providing [ ] ongoing, day-to-day investigative services, rather than performing administrative functions directly related to managing [ ] [the] business. From the information provided . . ., it appears that the primary duty of the Investigator is diligent and accurate fact-finding, according to DSS guidelines, the results of which are turned over to DSS who [*sic*] then makes a decision as to whether to grant or deny security clearances. Such activities, while important, **do not directly relate to the management or general business operations of the employer** within the meaning of the [Wage and Hour] regulations.
>
> Moreover, even if this work were viewed as related to the customer's (DSS) management or general business operations, . . . most of the work of the Investigators typically involves the use of skills in applying known standards or established techniques, procedures[,] or specific standards, as distinguished from work requiring the exercise of discretion and independent judgment as required for exemption under 29 C.F.R. § 541.202. Even though . . . the Investigators are 'evaluating alternative courses of conduct and acting upon that evaluation without immediate supervision,' . . . the Investigators are merely applying their knowledge to the following prescribed procedures or determining which procedure to follow, or determining whether standards are met. This is true even though they may have some leeway in reaching a conclusion or performing their work.
>
> In this regard, planning one's own workload, such as prioritizing the pursuit of particular leads, assessing whether the leads provided are in the Investigator's area of responsibility, or have provided information that requires further investigation, determining which potential witnesses to see and which documents to review, and making similar decisions that promote effective and efficient use of that individual's own work time in performing assigned investigative activities, do <u>not</u> constitute exercising discretion and independent judgment with respect to matters of

15

significance. It is not sufficient that an employee makes decisions regarding 'when and where to do different tasks, as well as the manner in which to perform them." *Clark v. J.M. Benson Co.*, 789 F.2d 282, 287 (4th Cir. 1986). Rather, the regulations emphasize both the nature and the level of importance of an employee's work in relation to managing the employer's (or customer's) business operations, and not simply the ultimate consequence of the work when mistakes are made (*See* 29 C.F.R. §§ 541.202(f).) Thus, the regulations provide that personnel clerks who screen applicants to obtain information about 'their minimum qualifications and fitness for employment' generally do not meet the duties requirements for the administrative exemption. 29 C.F.R. §§ 541.203(e). In contrast, a human resources manager who formulates employment policies, sets the minimum standards[,] and makes the ultimate hiring decisions generally meets the duties requirement. *Id.*

. . . [T]he duties and responsibilities of the . . . Investigators [do not] meet the factors required for exemption indicated above. The revised final FLSA regulations under 29 C.F.R. §§ 541.203(j) regard public sector inspectors, investigators[,] and similar employees, as employees whose duties have been found not to meet the requirements for the administrative exemption 'because their work typically does not involve work directly related to the management or general business operations of the employer.' Such employees also do not qualify for the administrative exemption because their work involves the use of skills and technical abilities in gathering factual information, applying known standards to prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met.

**(*Id.*)** (emphasis added).

51.    In sum, the DOL concluded, "[i]nvestigators do not qualify as bona fide administrative employees under Section 13(a)(1) of the FLSA. Hence, the . . . Investigators are covered by the minimum wage and overtime provisions of the FLSA." **(*Id.*)**.

52.    CACI's Field Investigators' job duties include:

    a.    Conducting comprehensive interviews with subjects, employers, associates, references, and other knowledgeable individuals;

    b.    Reviewing appropriate records in order to obtain facts necessary to resolve all material issues and/ or to establish the background, reputation, character, suitability, or qualifications of the subject under investigation; and

    c.    Documenting all information received and submitting a detailed report of the investigation in accordance with a strict timeline.

16

53. CACI's Field Investigators are required to possess the following qualifications: (i) a bachelor's degree; or (ii) equivalent experience; and (iii) 0-2 years of experience.

54. Accordingly, CACI's Field Investigators (including Mr. Champion) are improperly classified by CACI as FLSA-exempt.

55. Upon information and belief, CACI was aware: (i) of the attached DOL analysis regarding the non-applicability of the FLSA's administrative exemption to background investigators; (ii) that the Field Investigator job duties and qualifications were even more inappropriate to classify as falling under the FLSA's administrative exemption than the Investigators the DOL considered in determining such persons do not meet the FLSA's administrative exemption; and (iii) that the Field Investigators (including Mr. Champion) were not properly classified as FLSA-exempt.

56. Despite this awareness, CACI decided to treat the Field Investigators (including Mr. Champion) as if they were exempt in order to avoid paying overtime pay for the numerous hours worked by the Field Investigators in excess of forty (40) per workweek.

## V. CAUSES OF ACTION

### Count I

#### Retaliation:
(*Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq.*)

57. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-56 herein, inclusive.

58. Plaintiff questioned and protested Defendants' FLSA practices, including forcing Plaintiff to falsify his time cards to give the appearance he was not working in excess of forty (40) hours per week. Plaintiff also protested Defendants' failure to compensate Plaintiff for overtime worked.

17

59.     By protesting Defendants' unlawful wage practices, Plaintiff engaged in conduct protected by the FLSA.

60.     As set forth more fully herein, Defendants were aware Plaintiff had engaged in protected conduct.

61.     Within days of Plaintiff engaging in protected conduct, Defendants placed Plaintiff on an unpaid, indefinite, disciplinary suspension.

62.     The foregoing conduct constitutes retaliation in violation of the FLSA.

63.     As a direct and proximate result of Defendants' retaliation in violation of the FLSA, Plaintiff has suffered injuries and damages and is entitled to relief as set forth more fully herein.

## Count II

### Failure to Pay Overtime Wages - Collective Action:
(*Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq.*)

64.     Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-63 herein, inclusive.

65.     Plaintiff pleads additionally and alternatively to all other causes of action alleged in this Complaint, as may be amended.

66.     Defendants have misclassified their Field Investigators as FLSA-exempt.

67.     As set forth more fully herein, Defendants' Field Investigators do not qualify for any overtime exemption enumerated in the FLSA.

68.     As set forth more fully herein, Mr. Champion has worked numerous hours in excess of forty (40) per workweek during the three (3) years preceding the filing of this action but was not compensated accordingly.

18

69.     As set forth more fully herein, upon information and belief, Defendants maintain a company-wide policy of failing to pay Field Investigators overtime compensation. Accordingly, Defendants have approximately three thousand (3,000) current and former employees similarly-situated to Plaintiff who were similarly cheated out of overtime wages.

70.     The foregoing conduct violates the FLSA.

71.     As a direct and proximate result of Defendants' violation(s) of the FLSA, Plaintiff and all similarly-situated current and former employees of Defendants are owed overtime compensation and liquidated damages.

72.     Defendants' violations of the FLSA, as set forth more fully herein, were willful. Accordingly, the FLSA's three-year statute of limitations is applicable to Plaintiff's claims.

73.     Plaintiff brings this action on behalf of himself and the following proposed class of similarly-situated employees:

> All current, former, and future employees of CACI International, Inc., CACI Premier Technology, Inc., CACI, Inc. -Federal, and/or CACI NSS, Inc. d/b/a CACI (collectively "CACI") who have held non-exempt positions as Field Investigators while employed by CACI in the United States at any time from the date three (3) years prior to the filing of this action until the date of filing this action, who worked in excess of forty (40) hours per week in one (1) or more workweeks, and who have not been fully compensated for such overtime hours worked in violation of the FLSA.

74.     Defendants have subjected the aforementioned non-exempt Field Investigator employees to the unlawful practices alleged herein. Therefore, these employees are similarly-situated to Mr. Champion in this collective action.

75.     The proposed class members work in the same (or similar) jobs performing background investigations to be used by the federal government in determining whether to grant or renew security clearances for federal employees.

76.     The proposed class members are all subjected to the same mandate (promulgated by

19

CACI's nationwide management) that Field Investigators be improperly classified as FLSA-exempt.

77. The proposed class members, like the named plaintiff, are required to work overtime but are not paid in accordance with mandatory FLSA requirements.

78. The employment policies, practices and agreements of CACI raise questions of fact common to the class, including:

      a. Whether CACI improperly classified the Field Investigators as FLSA-exempt;

      b. Whether CACI has engaged in a pattern or practice of failing to keep accurate records exhibiting all hours worked by Plaintiff and members of the proposed class, in violation of the FLSA;

      c. Whether CACI has engaged in a pattern or practice of permitting or requiring Plaintiff and members of the proposed class to work overtime in excess of forty (40) hours per workweek without appropriate compensation, in violation of the FLSA;

      d. Whether CACI's conduct was willful; and

      e. Whether Plaintiff and members of the proposed class are entitled to lost wages, liquidated damages, attorney's fees and the other relief requested.

79. The claims of the named Plaintiff are similar to those of the class members, in that: (i) Defendants have subjected Plaintiff and the proposed class members to the same conduct; and (ii) Plaintiff's claims are based on the same legal theory as the proposed members of the collective action.

80. Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

81. As a direct and proximate result of Defendants' failure to pay overtime in violation of the FLSA, Plaintiff and the proposed class members has suffered injuries and damages and is entitled to relief as set forth more fully herein.

20

## VI.    DAMAGES

82.    Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-81 herein, inclusive.

83.    As a direct and proximate result of each and every one of the foregoing acts, conduct, and violations of the law alleged herein, Plaintiff has suffered damages in an amount and according to proof including, but without limitation, lost wages, unpaid overtime wages, loss of benefits, lost interest on wages and benefits, liquidated damages, actual monetary loss, inconvenience, embarrassment, humiliation, loss of lifetime earning capacity, and other incidental and/or consequential damages. Plaintiff seeks reinstatement or, in the alternative, front pay.

84.    As a direct and proximate result of each and every one of the foregoing acts, conduct, and violations of the law alleged herein, Defendants' employees similarly-situated to Plaintiff have suffered injuries and damages in an amount and, according to proof, including, without limitation, unpaid overtime compensation and liquidated damages.

85.    Plaintiff and similarly-situated employees are further entitled to and seek recovery of attorneys' fees and costs pursuant to the FLSA.

86.    Plaintiff and similarly-situated employees further seek an award of pre- and post-judgment interest as permitted by law.

## VI.    DAMAGES

**WHEREFORE**, Plaintiff, individually, and on behalf of similarly-situated employees, sues for unpaid overtime wages and liquidated damages for Defendants' failure to pay overtime compensation and liquidated damages for violations of the FLSA in an amount of not less than **THREE HUNDRED SEVENTY-NINE MILLION EIGHTY THOUSAND DOLLARS and 00/100 ($379,080,000.00).**

**WHEREFORE**, Plaintiff requests that the Court direct CACI to provide Plaintiff's counsel with all of

21

CACI's contact information for the members of the Class and authorize notice to issue to members of the collective action informing such members of the class of this action and permitting persons a reasonable opportunity to join this action.;

**WHEREFORE**, Plaintiff sues for compensatory damages directly and proximately resulting from Defendants' violation of Plaintiff's right to be free from retaliation for engaging in conduct protected by the FLSA and for any and all other damages he has suffered as may appear reasonable to the Court and jury in an amount not less than **ONE HUNDRED TWENTY THOUSAND DOLLARS and 00/100 ($120,000.00)**.

**WHEREFORE**, Plaintiff individually, and on behalf of similarly-situated employees, respectfully demands payment of his reasonable attorneys' fees and costs in bringing this action pursuant to the FLSA.

**WHEREFORE**, Plaintiff, individually and on behalf of similarly-situated employees, respectfully demands a jury be empaneled to hear this cause.

**WHEREFORE**, Plaintiff, individually and on behalf of similarly-situated employees, respectfully requests this Court award such other and further relief as may be appropriate and assess the costs of this cause against the Defendants.

Respectfully submitted this 23rd day of March 2018.

**(Signature of Counsel on Page 23 of 23)**

22

**RANDY CHAMPION, Individually and on Behalf of Similarly-Situated Employees**

By: /s/ James Friauf
James W. Friauf (#027238)
Ariana E. L. Mansolino (#035237)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike, Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 18-020-EPL

/s/ Mark N. Foster
Mark N. Foster (# 023626)
LAW OFFICE OF MARK N. FOSTER, PLLC
P.O. Box 869
Madisonville, Kentucky 42431
Tele: (270) 213-1303
Email: MFoster@MarkNFoster.com

*Attorneys for Plaintiff, Randy Champion, Individually, and on Behalf of Similarly-Situated Employees*

23